IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA L. PORTER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Case No. 4:19-cv-02350-SPM |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| DAVID R. PORTER, | ) |
| | ) |
|    Defendant. | ) |

**ANGELA L. PORTER'S RESPONSE TO DAVID R. PORTER'S MOTION TO DISMISS**

Plaintiff Angela L. Porter ("Angela") hereby responds to Defendant David R. Porter's ("David") Motion to Dismiss her First Amended Complaint as follows:

**BACKGROUND AND INTRODUCTION**

Angela brings this action in response to David's willful and unreasonable violation of not only her privacy but also state and federal law. During the time they were married, Angela and David agreed to maintain confidentiality over their own personal, separate electronic devices (*i.e.*, phones and tablets). First Amended Complaint ("FAC," ECF 16) ¶1. To that end, Angela kept her phone and tablet in a secure, locked storage area in her closet to which she did not give David authorization or permission to enter. *Id*. ¶¶1, 6. Angela wished to maintain the confidentiality of her personal communications, and at no point did she give access to her devices or share her passwords with anyone, including David. *Id*. ¶¶1, 6, 15. David, however, did not respect her wishes or her privacy. He surreptitiously gained access to her locked storage space without her knowledge or permission, removed and hacked her devices, and changed the settings so that he could intercept and monitor her private communications (including text messages and emails) with friends, relatives, and business associates. *Id*. ¶¶1, 7–9, 11. He also used information gained from spying on Angela to conceal from her his own extravagant

1

spending. *Id*. ¶¶9–10. After discovering David's illicit conduct, Angela had to spend thousands of dollars investigating and remedying his actions, including having to buy new electronic devices to replace the ones David hacked and illegally surveilled. *Id.* ¶¶20, 27, and 35.

Angela brings four claims against David: (1) invasion of privacy (tortious intrusion on seclusion) under Missouri common law; (2) violations of the Missouri Computer Tampering Act ("MCTA"); and (3) violations of the federal Computer Fraud and Abuse Act ("CFAA"); and (4) violations of the federal Wiretap Act. David moves to dismiss each count. David's motion fails for the following reasons:

- David's argument that Angela's claims are time-barred because his illegal conduct "could have" occurred outside the relevant limitations periods has no merit. A statute of limitations defense is an affirmative defense for which David has the burden of proof. Angela has no burden to plead that his illegal activity occurred within a certain time period. Dismissal would require the Court to factually determine when her claims accrued—*i.e.*, when she discovered David's spying—which it may not do on a motion to dismiss. Further, the Supreme Court has definitively ruled that statutes of limitation are **not** jurisdictional and compliance therewith need not be pled. *See* Section I *infra*.

- David's argument that Angela has not stated a claim under the CFAA has no merit. Courts recognize the cost of replacing equipment necessitated by prohibited conduct is a "loss" under the CFAA, and David cites **no** authority whatsoever holding otherwise. Further, it is undisputed that cost of investigating and remedying David's illegal conduct is a covered loss. Moreover, an explicit allegation that Angela incurred losses within one year is not required at the pleadings stage. *See* Section II *infra*.

- David's argument that he cannot be liable under the MCTA because Angela's phone and

tablet were "marital property," and thus he cannot have committed an offense because he was an "owner" of the devices he hacked, is unsupported and meritless. The sole statute on which he relies, R.S.Mo. 452.330.2, explicitly states its definition of "marital property" applies **only** in the context of dividing property upon the dissolution of the marriage. It does not give David cover to violate the MCTA. *See* Section III, *infra*.

- David's argument that he cannot have committed invasion of privacy because his marriage to Angela creates a "reasonable inference of consent" to his tortious conduct is unsupported and contrary to Missouri and Eighth Circuit law. Angela clearly alleged she never authorized or consented to David accessing her phone or tablet, and in fact went to great lengths to keep him from doing so. His secondary argument that his conduct was inoffensive because people in romantic relationships spy on each other all the time likewise is devoid of reason, logic, or any relevant legal authority. Given the lengths to which Angela went to maintain her privacy, David's ongoing breach of her trust and disrespect for her autonomy is highly offensive. *See* Section IV, *infra*.

- David's alternative request that the Court order Angela to provide a more definite statement is not warranted, as he can obtain the information he seeks through the normal discovery process. The Court should deny his request. *See* Section V, *infra*.

As explained further herein, the Court should deny David's motion.[1]

## **LEGAL STANDARD**

To survive a motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Miller v. DNJ Intermodel Services, LLC*, No. 13-80-SPM, 2013 WL 6159116, *1 (E.D. Mo. Nov. 25, 2013) (quoting

---

[1] Defendant also moves to strike Plaintiff's request for punitive damages under the CFAA and MCTA. Plaintiff is willing to withdraw its request for punitive damages with respect to the CFAA and MCTA claims, but reserves the right to reassert its request within the time specified in the Court's Scheduling Order for amending pleadings.

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (citing *Iqbal*, 556 U.S. at 678). "In ruling on a motion to dismiss, the court must view the allegations in the complaint liberally in the light most favorable to Plaintiff." *Krakowski v. American Airlines, Inc.*, 927 F.Supp.2d 769, 771 (E.D. Mo. 2013) (Ross, J., citation omitted). The Court also must take all factual allegations as true. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "[A]s a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Krakowski*, 927 F.Supp.2d at 772 (citation and internal quotations omitted). "The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim." *Id*. (citation omitted).

## ARGUMENT

**I.        Angela's Claims Are Timely.**

David argues each of Angela's claims should be dismissed because they supposedly are time-barred. *See* ECF 21 at 7–8 (CFAA claim), 9 (MCTA claim), 11–12 (Wiretap claim), and 13 (invasion of privacy claim). The crux of his argument is: (1) Angela alleges David illegally accessed her phone and tablet to intercept her confidential communications "during the course of the marriage," and (2) because they had been married since 1998, his illegal activities "**could have been** many years prior to the filing" of her lawsuit. *Id*. at 7 (emphasis added, citing FAC ¶¶1, 7). David's statute of limitations argument has no merit whatsoever.

A statute of limitations defense is an affirmative defense for which David has the burden of proof. *Metropolitan St. Louis Equal Housing Opportunity Council v. Tillman*, No. 07-4114, 2007 WL 3046585, *1 (W.D. Mo. Oct. 16, 2007) (citing *United States v. Soriano-Hernandez*,

4

310 F.3d 1099, 1103–04 (8th Cir. 2002)).  Angela need not "plead facts specific to defeating [a] statute of limitations affirmative defense." *Id*.  Dismissal on limitations grounds is appropriate "only if the complaint **on its face** is **conclusively** time-barred and 'no reasonable person could disagree on the date' on which the cause of action accrued." *Krakowski*, 927 F.Supp.2d at 773 (emphasis added, quoting *Tillman*, 2007 WL 3046586 at *1); *Gray v. Fedex Ground Package Sys., Inc.*, No. 06-422-JAR, 2011 WL 6260435, *2 (E.D. Mo. Dec. 15, 2011) (same).

Here, the FAC does not show Angela's claims are "conclusively time-barred." *Krakowski*, 927 F.Supp.2d at 773.  While some violations hypothetically "could have been" performed outside the limitations periods (ECF 21 at 7), they also could have been performed within them.  Angela has no obligation to plead precisely when they occurred or when she learned of them, *Garrett v. Cassity*, No. 09-1252-ERW, 2010 WL 2540748, *5 (E.D. Mo. June 17, 2010); *Tillman*, 2007 WL 3046585 at *1, and David's argument is based entirely on speculation.  Dismissing Angela's claims on limitations grounds would "require[] the [C]ourt to make fact-dependent determinations as to when the injury occurred and when [Angela] knew, or should have known, about the injury," which it may not do on a motion to dismiss.  *Tracy v. Telemetrix, Inc.*, No. 12-359, 2012 WL 3383229, *1 (D. Neb. May 3, 2016).  The "absence of sufficient facts to determine whether [Angela's] claims are time-barred" means that David's Motion "must be denied."  *Garrett*, 2010 WL 2540748 at *5.

*Tactical Personnel Leasing, Inc. v. Hajduk*, No. 18-203, 2018 WL 4740195 (W.D. Pa. Oct. 2, 2018), on which David relies in arguing Angela's CFAA claim is barred, is inapposite.  There, the plaintiff "d[id] not dispute that the pleaded acts" occurred outside the statute of limitations.  *Id*. at *4.  Here, Angela has not pled when David committed his illegal acts, and thus the FAC does not conclusively show Angela learned of David's illegal activities more than 2

5

years before she brought this action.  There are no grounds for dismissing her CFAA claim (or her other claims).

While David attempts to cite cases in which courts have dismissed claims for failing to allege compliance with the statute of limitations (*see* ECF 21 at 8), these cases are completely inapposite.  "[M]ost time bars are nonjurisdictional."  *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1632 (2015).  "[P]rocedural rules, including time bars, cabin a court's power **only** if Congress has 'clearly state[d]' as much."  *Id*. (emphasis added, quoting *Sebelius v. Auburn Regional Med. Ctr.*, 133 S.Ct. 817, 824 (2013)).  "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it."  *Id*.  Where a statute of limitations "speaks only to a claim's timeliness, not to a court's power," the limitations period is nonjurisdictional.  *Id*.

Here, there is no indication Congress intended the CFAA's statute of limitations to be jurisdictional—nor does David even attempt to argue it did.  While the statute states "no action may be brought … unless such action is begun within 2 years of the date of the act complained of or the date of discovery of the damage," 18 U.S.C. §1030(g), that is not the "clear statement" required to make the period jurisdictional.  In fact, the statute at issue in *Kwai Fun Wong* included even stronger language than the CFAA.  There, the statute mandated a claim "**shall be forever barred unless** it is presented [to the agency] … within two years … or unless action is begun with six months" of the agency's denial of the claim.  *Id*. (emphasis added, citing Federal Tort Claims Act, 28 U.S.C. §2401(b)).  The Supreme Court called this "mundane statute-of-limitations language, saying only what every time bar, by definition, must: that after a certain time a claim is barred."  Even the use of mandatory language ("shall be") was of "no consequence."  *Id*.  The CFAA's less stringent "no action **may be** brought" language cannot

6

show Congress' "clear intent" to make the limitations period jurisdictional.

David cites no authority holding there is clear Congressional intent to make the CFAA's limitations period jurisdictional. Tellingly, all but one of the cases he cites predate *Sebelius* and *Kwai Fun Wong* by **decades**, and none involve the CFAA. The lone recent case he cites, *Akins v. Jefferson County Dept. of Human Resources*, No. 16-662, 2017 WL 1105721, *8 (N.D. Ala. Mar. 24, 2017), is unavailing. *Akins* was an employment discrimination case brought under Title VII of the Civil Rights Act, which required plaintiffs to submit discrimination charges to the EEOC within 180 days of the violation. 29 CFR §1601.12(b)(1)(v)(A). Filing an EEOC complaint within that period was "an administrative prerequisite to bringing suit." *Akins*, 2017 WL 1105721 at *8. Thus, at issue in *Akins* was whether the plaintiff had satisfied this "administrative prerequisite," not the statute of limitations. Here, there are no such administrative prerequisites to a CFAA claim, and Angela was not required to file anything with any agency any number of days before bringing suit. In short, David has no authority for his argument.

Moreover, the statues of limitation on Angela's Missouri claims and federal Wiretap Act claim do not begin to run from the date David committed his illegal and tortious activities, but rather from the date Angela learned she had been damaged thereby. *See* R.S.Mo. §516.100 ("[a] cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained"); 18 U.S.C. §2520(e) (limitations period begins to run on "the date upon which the claimant first has a **reasonable opportunity to discover** the violation"). David fails to address these statutes. Instead, he takes

7

the position that Angela's claim should be dismissed because he was able to hide his illegal and tortious activities for a significant period of time. Dismissal is inappropriate.

David would have this Court dismiss Angela's claims on the notion that some of his illegal activities **may have** occurred outside the relevant limitations periods. The law does not allow dismissal on such hypothetical speculation. The Court should deny the Motion.

II.     Angela Has Stated A Claim Under The CFAA.

    A.     **Angela Seeks To Recover Compensable Losses And Thus States A CFAA Claim.**

David argues Angela's CFAA claim should be dismissed because (he claims) she does not meet the statute's minimum $5,000.00 "loss" requirement. ECF 21 at 5–7. Specifically, he claims that purchasing new electronic equipment does not amount to a "loss" under the statute. Once again, his argument fails.

First, David is incorrect that purchasing new equipment necessitated by his CFAA violation cannot be a covered loss. CFAA losses include **any** "direct costs of responding to a violation or assessing the damage done." *Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F.Supp.3d 659, 674 (E.D. Pa. 2018); *see also* 18 U.S.C. §1030(e)(11) ("'loss' means any reasonable cost to any victim"). Such losses include the cost of purchasing replacement equipment necessitated by a defendant's illegal activity. *Sachdev v. Sing*, No. 15-7114, 2016 WL 768861, *10 (S.D.N.Y. Feb. 26, 2016) (plaintiff sufficiently alleged CFAA losses by pleading "that due to the hacking, he … had to **purchase new devices** – *i.e.*, that his systems' integrity was impaired – and had to install a firewall to prevent malware from continuing to send information out of his computer.") (emphasis added); *see also U.S. v. Sullivan*, 40 Fed. Appx.

740, 744 (4th Cir. 2002) (cost of replacing memory cards was a covered loss under the CFAA).[2]

The cases on which David relies do not support his argument. None of them involved a plaintiff claiming losses for replacing electronic equipment. *See Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. Appx. 559, 562–63 (2d Cir. 2006) (seeking to recover for lost profits due to misappropriation of confidential data); *Jarosch v. Am. Family Mut. Ins. Co.*, 837 F.Supp.2d 980, 1021–23 (E.D. Wisc. 2011) (seeking to recover for security personnel's time investigating defendant's violations); *Global Policy Partners, LLC v. Yessin*, 686 F.Supp.2d 642, 647 (E.D. Va. 2010) (seeking to recover for "lost time" spent investigating and responding to CFAA violations). Moreover, these cases examined whether there was sufficient evidence to **prove** a CFAA claim at summary judgment or after trial, making them irrelevant at this stage. *Nexans Wires*, 166 Fed. Appx. at 561, 562–63 (affirming grant of summary judgment where it was "undisputed that no interruption of service occurred" that would allow for recovery of lost business profits); *Jarosch*, 837 F.Supp.2d at 984, 1022–23 (plaintiff did not prove in bench trial that investigation "in furtherance of this litigation" was "related to the impairment or damage to a computer or computer system"); *Global Policy Partners*, 686 F.Supp.2d at 651–52 (plaintiff adduced no evidence at trial to prove her time spent responding to defendant's violations). There is no reason costs for replacing Angela's devices cannot be "losses" under the CFAA.

Second, the cost of replacing her electronic equipment is not the only loss Angela alleges. She also incurred "costs associated with investigating and remedying the results of [David's] conduct" aggregating "at least $5,000.00 in value." FAC ¶35. It is undisputed that such costs are covered losses. *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F.Supp.3d 918, 927–28 (E.D. Va. 2017); *Teva Pharmaceuticals*, 291 F.Supp.3d at 674. The cases David cites in which

---

[2] Although *Sullivan* involved a criminal violation of the CFAA, not a civil violation, the definition of "loss" is the same in either type of case.

9

such allegations were deemed insufficient (ECF 21 at 6–7) are inapposite. In *Quantlab Technologies Ltd. (BVI) v. Godlevsky*, 719 F.Supp.2d 766, 776 (S.D. Tex. 2010), the plaintiff "fail[ed] to allege any costs associated with" its investigation; here, Angela incurred costs of "at least $5,000.00." FAC ¶35. In *Walsh v. Microsoft Corp.*, 63 F.Supp.3d 1312, 1320 (W.D. Wash. 2014), the plaintiff failed to allege any investigative costs incurred in his complaint, and instead impermissibly attempted to argue he suffered at least $5,000 in losses for the first time in response to a motion to dismiss. The plaintiff in *Brothers Media Group, LLC v. Sanders*, No. 17-1111, 2018 WL 3029061, *3 (M.D. Fla. May 30, 2018), pled a single "conclusory allegations that improperly lump[ed] together loss and damage, which are defined separately under the CFAA," and which affirmatively showed the plaintiff could not have incurred at least $5,000 in losses for investigating the defendant's alleged misconduct. The plaintiff in *Burnett v. Grundy*, No. 14-301, 2014 WL 12616808, *3 (W.D. Mo. Oct. 28, 2014), did not allege any monetary loss whatsoever, much less a loss of at least $5,000, like Angela has. In short, even if David was right that replacing electronic equipment was not a covered loss under the CFAA (and he is not, as discussed above), Angela still has alleged a covered loss for the costs of investigating and remedying his illegal activity, and thus has stated a CFAA claim.

      **B.**      **Explicit Allegations That Angela's Losses Occurred Within One Year Are Not Necessary.**

David's argument that Angela has failed to state a CFAA claim because there is no explicit allegation that her losses occurred in a one-year time span (ECF 21 at 4–5) is without merit. While David claims an explicit allegation is a "jurisdictional requisite" of a CFAA claim (ECF 21 at 5), he cites no authority for this proposition. The complaint in *Modis, Inc. v. Bardelli*, 531 F.Supp.2d 314, 319–20 (D. Conn. 2008), was not dismissed for failure to plead that losses occurred within one year. Rather, the plaintiff failed to "provide notice as to whether [it

10

was] asserting losses based on response costs or revenue due to an interruption of service."  *Id*. at 320.  That is not the case here, as Angela has pled her losses stem from her investigation into David's conduct and replacing the devices he illegally accessed.  Likewise, the complaint in *Halperin v. International Web Services, LLC*, 70 F.Supp.3d 893, 899 (N.D. Ill. 2014), was deficient because the plaintiff failed to allege he personally suffered $5,000 in losses, **not** because he failed to allege he suffered losses within one year.

Moreover, dismissal is inappropriate if the Court can "draw a reasonable inference" that the plaintiff is entitled to relief.  *Miller*, 2013 WL 6159116 at *1 (citing *Iqbal*, 556 U.S. at 678).  While Angela does not explicitly allege she incurred her losses within 365 days, the Court can infer she did so.  Angela clearly alleged how important her privacy was to her and the steps she took to keep anyone from reading her texts and emails (*e.g.*, she kept her devices in a locked space to which David did not have access, David surreptitiously took her devices and accessed her information and communications without her knowledge or consent).  FAC ¶¶6–7.  In light of how important privacy was to her, it simply makes no sense for her to wait more than a year to investigate the extent of David's misconduct and replace the devices he illegally accessed.  Further, Angela's allegations do not affirmatively show she incurred $5,000 in losses **outside** a one-year period.  There is thus no "insuperable bar to relief."  *Krakowski*, 927 F.Supp.2d at 772.  Dismissal under these circumstances is not appropriate.

**III.     Missouri's Marriage Dissolution Statute Does Not Exempt David From Liability Under The MCTA.**

Next, David argues he cannot be liable under the MCTA because he is an "owner" of his wife's phone and tablet under Missouri's joint property statute, R.S.Mo. §452.330.2, and thus could not access them illegally.  ECF 21 at 9.  Once again, David's argument has no merit.  Tellingly, he cannot cite a single case supporting his position.  Instead, he relies on R.S.Mo.

§452.330.2, which deals exclusively with the disposition of property and debts upon the dissolution of a marriage.  ECF 21 at 9.  The statute explicitly states: "**[f]or purposes of sections 452.300 to 452.415 only**, 'marital property' means all property acquired by either spouse subsequent to the marriage[.]"  R.S.Mo. §452.330.2 (emphasis added).  By its plain language, the statute applies **only** for the purposes of divorce proceedings, not it any other context, and certainly not for defining who can violate the MCTA.  If the Missouri legislature intended that spouses could not be liable under the MCTA, it would have drafted the statute to say so.  It did not.  The Court should deny the motion.

## IV. David's Conduct Is Highly Offensive And Is The Basis For a Valid Invasion Of Privacy Claims.

David argues Angela's invasion of privacy claim should be dismissed because (1) there was a "reasonable inference that [Angela] was aware of [David's] access, and gave actual consent," and (2) David's conduct was not actually offensive.  ECF 21 at 12–13.  Neither point holds water.

First, no authority supports David's argument that Angela automatically consented to his accessing the devices she literally kept under lock and key simply because they were married at the time of his illegal actions, nor does he attempt to cite any.[3]  Indeed, the facts show not only that Angela did not consent, but that she took affirmative steps to keep David from accessing her devices and reading her communications.  Angela alleges that David "accessed [her] cell phone and computer tablet without her knowledge or authorization" (FAC ¶¶1, 7), that she kept her tablet in a locked closet to which David did not know the combination (*id*. ¶6), that David obtained access to this locked space without her knowledge or consent (*id*. ¶7), that he never had

---

[3] In his first motion to dismiss, David based this argument on *Anzaldua v. Nebraska Ambulance & Fire Protection District*, 978 F.Supp.2d 1016, 1030–31 (E.D. Mo. 2013).  ECF 9 at 7.  In her response to that first motion, Angela explained how *Anzaldua* was completely inapposite.  ECF 11 at 10.  By withdrawing any citation to *Anzaldua* in the current motion but not replacing it with any other case, David concedes his argument has no merit.

permission to access the information on her phone or tablet or read her texts, emails, and other communications (*id*. ¶12), and that she "purposely did not give access to her electronic devices and did not disclose her passwords to others, including [David], in order to maintain the confidentiality of her information and communications" (*id*. ¶15). The only "reasonable inference" these allegations create is that Angela went to great lengths to keep David from accessing her private, confidential information, and he did so anyway without her permission. Under the circumstances, any reasonable person would deem his conduct highly offensive.

Further, David's "reasonable inference of consent" is inconsistent with Missouri law. In *Lee v. Lee*, 967 S.W.2d 82, 85 (Mo. App. W.D. 1998), the Missouri Court of Appeals held that Missouri's wiretap statute (R.S.Mo. §542.402) prohibits one spouse from intercepting the other spouse's communications—just as David did here. The Eighth Circuit likewise has held that people who spy on their spouses violate the federal Wiretap act, 18 U.S.C. §2511. *Kempf v. Kempf*, 868 F.2d 970, 972–73 (8th Cir. 1989). The courts could not have done so if there truly was an "inference of consent" for spouses to access each other's devices and spy on their private communications, as David contends.

Second, the cases David cites for his conclusory argument that his conduct cannot be highly offensive conduct as a matter of law are inapposite. *Elgin v. St. Louis Coca-Cola Bottling Co.*, No. 05-970-DJS, 2005 WL 3050633, (E.D. Mo. Nov. 14, 2005), was decided at summary judgment, **not** the pleadings stage, and thus is completely irrelevant to this motion. Even so, it bears no resemblance to this case. There, an employer put a GPS tracker on a **company-owned** vehicle. *Id*. at *3. The information gathered was "limited to the whereabouts of the company vehicle at any given point at time," and the employer was "not alleged to have surreptitiously gathered any information form [*sic*] or about the vehicle driven by plaintiff." *Id*. *Elgin* could not

13

be more dissimilar to this case, in which David broke into Angela's personal space, stole her personal devices, and surreptitiously spied on her personal communications.[4] *Saumweber v. Green Tree Servicing, LLC*, No. 13-3628, 2015 WL 2381131 (D. Minn. May 19, 2015), likewise is completely irrelevant.  Not only was *Saumweber* a summary judgment case, it involved **Minnesota** law, not **Missouri** law.  Further, the alleged intrusion on privacy complained of was a mortgage servicer pulling debtors' credit reports in order to determine their ability to qualify for a mortgage modification.  *Id*. at *1–2.  This is nothing like David surreptitiously taking Angela's devices so he could spy on personal communications she desired to keep private.

  Moreover, David's conclusory argument that "[i]t is not uncommon for a spouse to access another spouse's iPad and iPhone when their marriage is allegedly deteriorating" (ECF 21 at 13) (for which he does not even attempt to offer a citation) is as ridiculous as it is unsupported.  However other married couples may conduct themselves in their relationship, the FAC clearly alleges that Angela and David chose to not share their passwords and devices with **anyone**, including each other.  FAC ¶¶6, 15.  Angela abided by this arrangement and respected David's privacy.  David did not.  His conduct goes beyond mere curiosity—he accessed a locked storage space to which he did not have the combination without Angela's permission, hacked into her phone and tablet, spied on her private communications, and used his illicit access to her devices to conceal his extravagant spending.  *Id*. ¶¶7–9.  David violated Angela's trust and privacy, without regard for her autonomy or agency as a person.  If that is not "highly offensive," nothing is.  David's argument has no place in modern society, and the Court should reject it.

### V. David's Request For A More Definite Statement Is Inappropriate.

  David also requests that if the Court does not dismiss the FAC, it should order Angela to

---

[4] The *Elgin* court also recognized that the plaintiff would not have had a reasonable expectation of privacy in the location of the vehicle he was driving had the case been in the Fourth Amendment context.  2005 WL 3050633 at *3 (citing *U.S. v. Knotts*, 460 U.S. 276, 281–82 (1983)).

file a more definite statement.  Motions for a more definite statement are disfavored, however, "because pleadings are to be construed liberally to do substantial justice, and Rule 12(e) is plainly designed to strike at unintelligibility rather than lack of detail." *Wilson v. Jefferson Cnty.*, 18-1957-CAS, 2019 WL 585423, 1 (E.D. Mo. Feb. 13, 2019) (citation omitted).  Motions for a more definite statement "are not to be used to test the opponent's case by requiring him to allege certain facts or retreat from his allegations.  And, they are not to be used as a substitute for discovery in trial preparation." *Tinder v. Lewis Cnty. Nursing Home Dist.*, 207 F.Supp.2d 951, 959 (E.D. Mo. 2001) (Medler, Mag. J.).  Even if a pleading lacks factual detail, parties are encouraged to "obtain additional information through discovery." *Rightchoice Managed Care, Inc. v. Hospital Partners, Inc.*, No. 18-6037, 2019 WL 302515, *10 (W.D. Mo. Jan. 23, 2019).  The FAC is not confusing, ambiguous, or unintelligible.  If David desires more information about Angela's claims, he can obtain that information through the discovery process.

**VI.     If The Court Grants The Motion, It Should Grant Leave To Re-Plead.**

If the Court dismisses the FAC, in whole or in part, it should grant leave to re-plead.  *See* Fed. R. Civ. P. 15(a)(2) ("The Court should freely grant leave [to amend] when justice so requires."); *Marion v. Rehabworks, Inc.*, 206 F.R.D. 643, (E.D. Mo. 2001) ("Unless there is a good reason for denial, "such as undue delay, bad faith, or prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.'") (citation omitted).  Dismissal with prejudice would be inappropriate in light of the Rules' policy favoring amendment.

## **CONCLUSION**

David's arguments in favor of dismissal are completely unsupported by legal authority.  Thus, the Court should deny his motion.

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By: */s/ Teresa Dale Pupillo*
Teresa Dale Pupillo, #42975MO
Stephen Hoeplinger, #66879MO
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
(314) 863-1500
(314) 863-1877 (facsimile)
tpupillo@bbdlc.com
shoeplinger@bbdlc.com

*Attorneys for Plaintiff Angela L. Porter*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served on all parties through the Court's CM/ECF system on this 2nd day of October, 2019.

*/s/ Teresa Dale Pupillo*